**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Dean D. Hunt

Hearing Date: May 2, 2017
Time:  10:00 a.m.

Objection Deadline: March 31, 2017
Time:  5:00 p.m.

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No.: 10-04417 (SMB) |
| v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |
| Defendants. | |

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L.
Madoff Investment Securities LLC and Bernard L.
Madoff,

                                        Plaintiff,                    Adv. Pro. No. 10-04554 (SMB)

              v.

DAVID IVAN LUSTIG,

                                        Defendant.


### MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S
### MOTION TO STRIKE AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND AND STATEMENT OF FACTS ..........................................................1

   A.   Adv. Pro. No. 10-04417 – The Lustig Family 1990 Trust and David I. Lustig.................. 1

   B.   Adv. Pro. No. 10-04554 – David Ivan Lustig................................................................. 2

   C.   Defendants' Eighth, Ninth, Tenth, Eleventh and Twelfth Affirmative Defenses.............. 2

II.    STANDARD FOR GRANTING MOTION TO STRIKE...................................................3

III.    DEFENDANTS' EIGHTH, NINTH, TENTH, ELEVENTH AND TWELFTH
       AFFIRMATIVE DEFENSES ARE INSUFFICIENT AS A MATTER OF LAW .............5

   A.   Affirmative Defenses Eight and Nine – Equitable Defenses............................................. 5

   B.   Affirmative Defense Ten – Single Satisfaction Rule........................................................ 7

   C.   Affirmative Defense Eleven – Recoupment .................................................................... 9

   D.   Affirmative Defense Twelve – Set-Off......................................................................... 10

IV.    THE TRUSTEE WILL BE PREJUDICED BY INCLUSION OF DEFENDANTS'
       EIGHTH, NINTH, TENTH, ELEVENTH AND TWELFTH AFFIRMATIVE
       DEFENSES ....................................................................................................................12

V.    CONCLUSION..............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adbox, Inc.*,
    488 F.3d 836 (9th Cir. 2007) ..............................................................12

*In re Ampal-Am. Israel Corp.*,
    545 B.R. 802 (Bankr. S.D.N.Y. 2016) ...................................................11

*Bennett v. Rodman & English, Inc.*,
    2 F.Supp. 355 (E.D.N.Y. 1932) .......................................................10, 11

*Chiasson v. J. Louis Matherne and Assocs.* (*In re Oxford Mgmt., Inc.*),
    4 F.3d 1329 (5th Cir. 1994) ..................................................................5

*Coach, Inc. v. Kmart Corp.*,
    756 F.Supp.2d 421 (S.D.N.Y. 2010).......................................................4

*In re Coin Phones, Inc.*,
    153 B.R. 135 (Bankr. S.D.N.Y. 1993) ...................................................11

*Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*),
    312 B.R. 262 (Bankr. D.N.J. 2004) .........................................................8

*In re Drexel Burnham Lambert Group, Inc.*,
    113 B.R. 830 (Bankr. S.D.N.Y. 1990) ...................................................11

*FDIC v. Eckert Seamans Cherin & Mellott*,
    754 F.Supp. 22 (E.D.N.Y. 1990) ......................................................4, 12

*Hitchcock v. Rollo*,
    Fed. Cas. No. 6535...............................................................................11

*Irving Trust Co. v. Frimitt*,
    1 F.Supp. 16 (S.D.N.Y. 1932), *aff'd in part, rev'd in part on other grounds*,
    48 B.R. 824 (Bankr. S.D.N.Y. 1985) ................................................10, 12

*In re Manshul Constr. Corp.*,
    2000 WL 1228866, 2000 U.S. Dist. LEXIS 12576 (S.D.N.Y. Aug. 30, 2000).......................11

*McColley v. Rosenberg* (*In re Candor Diamond Corp.*),
    76 B.R. 342 (Bankr. S.D.N.Y. 1987) .....................................................11

*Merrill v. Abbott* (*In re Indep. Clearing House Co.*),
    77 B.R. 843, 877 (D. Utah 1987)........................................................9, 10

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
    277 B.R. 520 (Bankr. S.D.N.Y. 2002) ......................................................................6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alexander*,
    728 F.Supp. 192 (S.D.N.Y. 1989) .............................................................................3

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*,
    351 F.3d 86 (2d Cir. 2003)........................................................................................6

*New York State Elec. and Gas Corp v. McMahon* (*In re McMahon*),
    129 F.3d 93 (2d Cir. 1997)........................................................................................9

*In re O.P.M. Leasing Servs., Inc.*,
    35 B.R. 854 (Bankr. S.D.N.Y. 1983) ...............................................................10, 11

*In re Plaza de Diego Shopping Ctr., Inc.*,
    911 F.2d 820 (1st Cir. 1990) .....................................................................................5

*In Re Public Serv. Co. of N.H.*,
    107 B.R. 441 (Bankr. D.N.H. 1989) ........................................................................9

*Sec. Exch. Comm'n v. McCaskey*,
    56 F.Supp.2d 323 (S.D.N.Y. 1999) ....................................................................4, 13

*Sec. Exch. Comm'n v. Toomey*,
    866 F.Supp. 719 (S.D.N.Y. 1992) ...............................................................4, 12, 13

*In re Singh*,
    434 B.R. 298 (Bankr. E.D.N.Y. 2010)...................................................................12

*Specialty Minerals, Inc. v. Pluess–Staufer AG*,
    395 F.Supp.2d 109 (S.D.N.Y. 2005)...................................................................4, 13

*In re Sterling Die Casting Co., Inc.*,
    118 B.R. 205 (Bankr. E.D.N.Y. 1990)......................................................................3

*Styler v. Jean Bob Inc.* (*In re Concept Clubs, Inc.*),
    154 B.R. 581 (D. Utah 1993) ....................................................................................9

*United States v. Sutton*,
    786 F.2d 1305 (5th Cir. 1986) ..................................................................................5

*University Medical Center v. Sullivan (In re University Medical Ctr.)*,
    973 F.2d 1065 (3d Cir. 1992)....................................................................................9

*In re Waterscape Resort LLC*,
    544 B.R. 507 (Bankr. S.D.N.Y. 2016)................................................................9, 11

*Wausau Bus. Ins. Co. v. Horizon Admin. Svcs. LLC*,
    803 F.Supp.2d 209 (E.D.N.Y. 2011) ...............................................................................4, 12

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 136 (2d Cir. 1998)...........................................................................................11

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................................5, 6, 8

11 U.S.C. § 550(d) ...................................................................................................................7, 8

11 U.S.C. § 553 ......................................................................................................................10, 11

Code Section 553(a)................................................................................................................10, 11

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ....................................................1

SIPA § 78*lll*(2) ...........................................................................................................................6

SIPA § 78*lll*(4) ...........................................................................................................................6

**Rules**

Federal Rules of Bankruptcy Procedure Rule 7012.......................................................................1

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................................................................4

Federal Rules of Civil Procedure Rule 12(f) ...........................................................................1, 3

Local Bankruptcy Rule 7007-1 ....................................................................................................3

Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA") files this Memorandum of Law in support of the Trustee's motion (the "Motion") to strike certain of Defendants The Lustig Family 1990 Trust and David Ivan Lustig's (collectively, "Defendants") affirmative defenses under Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to eliminate the expense and delay of litigating these legally insufficient defenses.

## I.    BACKGROUND AND STATEMENT OF FACTS

### A.    Adv. Pro. No. 10-04417 – The Lustig Family 1990 Trust and David I. Lustig

On March 18, 2016, the Trustee filed his First Amended Complaint against The Lustig Family 1990 Trust (the "Lustig Trust") and David I. Lustig, individually and in his capacity as Trustee for the Lustig Trust.[1] BLMIS Account No. 1ZB268 was held in the name "David I. Lustig TRF Lustig Family 1990 Trust dated 1/31/90." During the two years prior to December 11, 2008, BLMIS made transfers to Lustig, or to the Lustig Trust and for the benefit of Lustig, totaling $4,241,336 in fictitious profits.

As alleged in the Trustee's First Amended Complaint, Lustig requested three wire transfers from Account No. 1ZB268 to a bank account held in his name (the "David Lustig Bank Account") that comprise the fictitious profits at issue. On or about July 23, 2007, Lustig sent a letter to BLMIS requesting that BLMIS transfer $5,000,000 from Account No. 1ZB268 to the David Lustig Bank Account. On or about July 24, 2007, BLMIS wired $5,000,000 from the

---

[1] Defendants' investment history with BLMIS and the facts surrounding the operation and collapse of Madoff's Ponzi scheme are more fully set forth in the Trustee's First Amended Complaint. (Adv. Pro. No. 10-04417, *Picard v. The Lustig Family 1990 Trust, et al.* (the "Lustig Trust Dkt."), No. 57).

BLMIS Bank Account to the David Lustig Bank Account. Of that amount, $2,241,336 was fictitious profits.

On or about December 18, 2007 and again on September 23, 2008, Lustig sent letters to BLMIS, requesting that BLMIS transfer $500,000 and $1,500,000 respectively from Account No. 1ZB268 to the David Lustig Bank Account. BLMIS wired these amounts from the BLMIS Bank Account to the David Lustig Bank Account. Each of these transfers were fictitious profits.

**B.     Adv. Pro. No. 10-04554 – David Ivan Lustig**

On March 18, 2016, the Trustee filed his First Amended Complaint against David Ivan Lustig.[2] BLMIS Account No. 1ZR297 was held in the name "NTC & Co. FBO David Ivan Lustig." During the two years prior to December 11, 2008, BLMIS made a transfer to Lustig of $1,863,225 in fictitious profits.

**C.     Defendants' Eighth, Ninth, Tenth, Eleventh and Twelfth Affirmative Defenses**

On May 2, 2016, Defendants filed their Answers to the Trustee's First Amended Complaints in each adversary proceeding. (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61). Defendants' Answers assert five defenses based on the contention that, after they withdrew funds from BLMIS Account Nos. 1ZB268 and 1ZR297, they invested monies through a series of third-party investment vehicles, including Lakeview Investment L.P. ("Lakeview"), that were allegedly invested in BLMIS. These reinvested funds were allegedly lost as a result of the Ponzi scheme.

Specifically, Defendants allege that the $5,000,000 withdrawn from BLMIS Account No. 1ZB268 on July 24, 2007, and the $2,000,000 withdrawn from BLMIS Account No. 1ZR297 on

---

[2] Defendant's investment history with BLMIS and the facts surrounding the operation and collapse of Madoff's Ponzi scheme are more fully set forth in the Trustee's First Amended Complaint. (Adv. Pro. No. 10-04554, *Picard v. David Ivan Lustig* (the "Lustig Dkt."), No. 60).

July 25, 2007, were "immediately reinvested back into BLMIS" through Lakeview[3] "until all of it was lost as a result of Madoff's fraud." (Lustig Trust Dkt. No. 58 and Lustig Dkt. No. 61 at Eighth through Twelfth Affirmative Defenses).

In sum, Defendants speculate that monies may have been indirectly invested in BLMIS through a series of third-party investment vehicles, including Lakeview, and then were lost as a result of Madoff's fraud.[4] Even if Defendants' allegations are taken as true, Defendants' Eighth, Ninth, Tenth, Eleventh and Twelfth Affirmative Defenses (the "Affirmative Defenses") fail as a matter of law, because they are contrary to the mandate of the Bankruptcy Code (the "Code") and the structure of this SIPA liquidation.

## II.   STANDARD FOR GRANTING MOTION TO STRIKE

On January 25, 2017, following a discovery conference pursuant to Local Bankruptcy Rule 7007-1 regarding Defendants' discovery requests to the Trustee relating to the Affirmative Defenses, the Court entered Orders authorizing the Trustee to move to strike the Affirmative Defenses pursuant to Federal Rule of Civil Procedure 12(f).[5]   Rule 12 permits courts to strike any insufficient defenses. FED. R. CIV. P. 12(f). "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances." *In re Sterling Die Casting Co., Inc.*, 118 B.R. 205, 207 (Bankr. E.D.N.Y. 1990); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alexander*, 728 F.Supp. 192, 203 (S.D.N.Y. 1989).

"The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question

---

[3] Defendants contend that Lakeview was a third-party feeder fund, but it was not and Lakeview did not have a BLMIS account.  Instead, Lakeview invested in other investment vehicles that may, or may not, have invested in other BLMIS feeder funds.

[4] *See* Defendants' Answers at Eighth through Twelfth Affirmative Defenses (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

[5] (Lustig Trust Dkt. No. 70; Lustig Dkt. No. 73).

of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess–Staufer AG*, 395 F.Supp.2d 109, 111 (S.D.N.Y. 2005). In considering the sufficiency of a defense under the first two prongs of the analysis, "courts apply the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Coach, Inc. v. Kmart Corp.,* 756 F.Supp.2d 421, 425 (S.D.N.Y. 2010).

"[I]f an affirmative defense is unavailable as a matter of law, the first part of the inquiry is complete," meaning that "there are no substantial questions of law or fact that might allow the defense to succeed." *Wausau Bus. Ins. Co. v. Horizon Admin. Svcs. LLC*, 803 F.Supp.2d 209, 213 (E.D.N.Y. 2011); *see also Sec. Exch. Comm'n v. Toomey,* 866 F.Supp. 719, 722 (S.D.N.Y. 1992) ("When 'the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim'") (quoting *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 23 (E.D.N.Y. 1990)).

When an affirmative defense is unavailable as a matter of law, the only remaining inquiry is whether the plaintiff would be prejudiced if the defense remained in the pleadings. *See Wausau*, 803 F.Supp.2d at 213. Here, the Trustee will be prejudiced by the discovery obligations he will face if compelled to address the meritless defenses asserted by Defendants. *See Sec. Exch. Comm'n v. McCaskey*, 56 F.Supp.2d 323, 326 (S.D.N.Y. 1999) ("An increase in time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.") (citing *Toomey*, 866 F.Supp. at 722); *Specialty Minerals, Inc.*, 395 F.Supp.2d at 114 (finding prejudice where "additional discovery would be required" and "length and scope of the portion of the trial related to the claims raised in this proceeding would be expanded" by inclusion of affirmative defense).

4

## III.    DEFENDANTS' EIGHTH, NINTH, TENTH, ELEVENTH AND TWELFTH AFFIRMATIVE DEFENSES ARE INSUFFICIENT AS A MATTER OF LAW

### A.    Affirmative Defenses Eight and Nine – Equitable Defenses

Defendants' Eighth Affirmative Defense asserts that the Trustee's attempt to recover from Defendants is unreasonable and unconscionable, and the Court should use its equitable powers under 11 U.S.C. § 105(a) to dismiss the Trustee's claims.[6] Defendants' Ninth Affirmative Defense requests the Court grant an "equitable credit" under 11 U.S.C. § 105(a) in the amount "returned to BLMIS through their Lakeview investment."[7] Both of these purported defenses are insufficient as a matter of law because they directly contradict the Code and are not supported elsewhere in the law.

"Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code," but the "statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Chiasson v. J. Louis Matherne and Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1333-1334 (5th Cir. 1994) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)); *see also*, *e.g.*, *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir. 1990). "The equitable power conferred on the bankruptcy court

---

[6] Defendants' Eighth Affirmative Defense asserts "[t]he entire sum of $5,000,000 [$2,000,000] that was withdrawn from the Account on or about July 24, 2007 [July 25, 2007], was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. The Trustee's attempt to recover any portion of this money from Defendants even though all of it had been returned to BLMIS and subsequently lost as a result of Madoff's fraud is unreasonable and unconscionable. Under these circumstances, the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and dismiss the Trustee's claim." (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

[7] Defendants' Ninth Affirmative Defense asserts "[t]he entire sum of $5,000,000 [$2,000,000] that was withdrawn from the Account on or about July 24, 2007 [July 25, 2007], was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. Under these circumstances, the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and grant Defendants an 'equitable credit' in the full amount (i.e., $5,000,000 [$2,000,000]) that they had returned to BLMIS through their Lakeview investment." (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003) (emphasis added).

There is no support for broadening the scope of section 105(a) to create the substantive rights requested by Defendants. In fact, applying section 105(a) to grant Defendants equitable credit would require a much more expansive reading of the section than is supported by the law, and would directly contradict the priority scheme of the Code and SIPA as well as the rulings of this Court holding that indirect investors in BLMIS—which the Defendants claim to be—do not qualify as customers eligible to share in customer property. Under SIPA, the Trustee is responsible for distributing customer property to the fullest extent possible, but only to a broker's customers. The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property." SIPA § 78*lll*(4). It is the customer's burden to demonstrate he or she is entitled to customer status.[8] This Court has granted fifteen motions by the Trustee to affirm his determinations that claimants who invested in a BLMIS accountholder are <u>not</u> customers under SIPA.[9]

---

[8] *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002).

[9] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In: S&P or P&S Associates, General Partnerships, Dkt. No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., Dkt. No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, Dkt. No. 10010 (May 18, 2015); Epic Ventures, LLC, Dkt. No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Hamick & Steven P. Norton, Partners, Dkt. No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, Dkt. No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, Dkt. No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, Dkt. No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, Dkt. No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, Dkt. No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the

6

Defendants withdrew money from BLMIS. Defendants allege they invested that money in Lakeview, which in turn allegedly invested in non-feeder fund investment vehicles of the Tremont Capital Group and Wailea Partners, LP, which in turn may, or may not, have invested in the Senator Fund SPC. In the first instance, Defendants cannot demonstrate that the funds purportedly invested in various investment vehicles were actually reinvested in BLMIS. Further, under this Court's prior decisions, Defendants do not qualify as customers under SIPA because, even taking their allegations as true, Defendants did not invest in BLMIS, but instead participated in investment vehicles that may have invested in BLMIS. As a result, they are not customers and do not have valid customer claims that they can use to offset their liability in these adversary proceedings.

Affirmative Defenses Eight and Nine fail as a matter of law and should be struck.

## B.    Affirmative Defense Ten – Single Satisfaction Rule

Defendants' Tenth Affirmative Defense asserts that the Trustee's attempt to recover from Defendants "money which they had [] already returned to the BLMIS estate" violates the single satisfaction rule codified at 11 U.S.C. § 550(d).[10] The single satisfaction rule is inapplicable here for a number of reasons. First, the Trustee is not seeking a double satisfaction from Defendants.

---

Miller Partnership, Dkt. No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, Dkt. No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, Dkt. No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., Dkt. No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., Dkt. No. 14774 (Dec. 22, 2016).

[10] Defendants' Tenth Affirmative Defense asserts "[t]he entire sum of $5,000,000 [$2,000,000] that was withdrawn from the Account on or about July 24 [July 25], 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. The Trustee's attempt to recover from Defendants money which they had thus already returned to the BLMIS estate violates the single satisfaction rule codified at 11 U.S.C. § 550(d), which bars recovery from a transferee where the value of the transferred property had already been returned to the estate." (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

Contrary to their misleading characterization, Defendants did not return money to the BLMIS estate. Rather, Defendants invested in a wholly separate entity, Lakeview, which in turn may have invested, through additional wholly separate entities, with BLMIS. Defendants' claims related to investments they made with funds withdrawn from their BLMIS accounts, to the extent they exist, are against the entities in which they subsequently invested, such as Lakeview, not against the debtor's estate.

Defendants have relied on *Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*), to support their contention that they are entitled to equitable relief. 312 B.R. 262 (Bankr. D.N.J. 2004). In *Dobin*, the court exercised its section 105(a) powers based on section 550(d) of the Code, which limits a trustee to a "single satisfaction" of an avoidable transfer, thereby restoring the debtor's estate to the condition it would have been in had the transfer never occurred. *Id.* at 268-271.

But *Dobin* is inapplicable here. Unlike *Dobin*, the Trustee is not seeking a double satisfaction of amounts owed. Taking their allegations as true, Defendants withdrew money from BLMIS and invested it with Lakeview, which invested money in other entities that may or may not have had a business relationship with BLMIS. Defendants' proper channel for recovery of any money invested with Lakeview is from Lakeview and any other third-party investment vehicles through which Defendants allegedly reinvested in BLMIS.  In fact, Defendants admit that they have already recovered at least $792,654 from Lakeview.[11] By attempting to evade the Trustee's recovery effort while simultaneously recovering from Lakeview, it is Defendants who are seeking a double recovery.

As a result, Defendants' Tenth Affirmative Defense is legally insufficient.

---

[11] *See* Correspondence to the Court regarding Defendants' First Sets of Interrogatories and Document Requests and the Trustee's Responses and Objections to Defendants' First Sets of Interrogatories and Document Requests. (Lustig Trust Dkt. No. 67; Lustig Dkt. No. 70).

C.    **Affirmative Defense Eleven – Recoupment**

Defendants' Eleventh Affirmative Defense asserts that Defendants are entitled to an offset or credit under the theory of recoupment.[12] "A 'recoupment' is an offset based upon a claim for relief arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claims." *Styler v. Jean Bob Inc.* (*In re Concept Clubs, Inc.*), 154 B.R. 581, 586 n.3 (D. Utah 1993) (emphasis in original) (*citing* Lawrence P. King, 4 Collier on Bankruptcy ¶ 553.03, at 553–15 (15th ed. 1993)). Recoupment in bankruptcy is allowed only "within a single contract or transaction or a single set of transactions." *New York State Elec. and Gas Corp v. McMahon* (*In re McMahon*), 129 F.3d 93, 96 (2d Cir. 1997). Indeed, "the recoupment doctrine is a limited one and should be narrowly construed." *Id.* at 97 (*citing In Re Public Serv. Co. of N.H.*, 107 B.R. 441, 444 (Bankr. D.N.H. 1989)). A "mere logical relationship is not enough" to warrant recoupment in the bankruptcy context. *University Medical Center v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992). Recoupment should be limited to cases in which "both debts…arise out of a *single integrated transaction...*" *Id.* (emphasis added); *see also In re Waterscape Resort LLC*, 544 B.R. 507, 527 (Bankr. S.D.N.Y. 2016).

Defendants have argued that recoupment is applicable in these circumstances based on the court's opinion in *Merrill v. Abbott* (*In re Indep. Clearing House Co.*), which involved funds from a Ponzi scheme that were reinvested directly with the debtor, rather than with a third party that invested with the debtor. 77 B.R. 843, 877 (D. Utah 1987). The court was able to find that

---

[12] Defendants' Eleventh Affirmative Defense asserts "[t]he entire sum of $5,000,000 [$2,000,000] that was withdrawn from the Account on or about July 24 [July 25], 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. Accordingly, Defendants are entitled to an offset or credit under the theory of recoupment in the full amount (i.e., $5,000,000 [$2,000,000]) that they had returned to BLMIS through their Lakeview investment." (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

the "same transaction" requirement was satisfied and, as a result, held recoupment was applicable. *Id*. at 877-78. By contrast, Defendants' recoupment claims do not arise out of the same contract, single integrated transaction or series of transactions. Defendants allege they withdrew money from their BLMIS accounts and subsequently entered into a separate and distinct contract and transaction (or series of transactions) with a third-party investment vehicle, Lakeview. Defendants admit that Lakeview then engaged in a series of additional transactions with various parties for the prospective reinvestment of funds with BLMIS. The single or same transaction requirement cannot be met under these circumstances.

Defendants' Eleventh Affirmative Defense is insufficient as a matter of law.

### D.    <u>Affirmative Defense Twelve – Set-Off</u>

Defendants' Twelfth Affirmative Defense asserts an entitlement to set-off under 11 U.S.C. § 553.[13] Section 553(a) of the Code recognizes and preserves the right to setoff afforded outside of bankruptcy, stating, "[t]his title does not affect any right of a creditor to offset *a mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…" 11 U.S.C. § 553(a) (emphasis added). "It is well established that a party will be unable to assert a setoff where that party is being sued for fraudulent transfers." *In re O.P.M. Leasing Servs., Inc.*, 35 B.R. 854, 868 (Bankr. S.D.N.Y. 1983) (citing *Bennett v. Rodman & English, Inc.*, 2 F.Supp. 355, 358 (E.D.N.Y. 1932); *Irving Trust Co. v. Frimitt*, 1 F.Supp. 16 (S.D.N.Y. 1932), *aff'd in part, rev'd in part on other grounds*, 48 B.R. 824 (Bankr.

---

[13] Defendants' Twelfth Affirmative Defense asserts "[t]he The entire sum of $5,000,000 [$2,000,000]) that was withdrawn from the Account on or about July 24 [July 25], 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. Accordingly, Defendants are entitled to a set-off under 11 U.S.C. § 553 in the full amount (i.e., $5,000,000 [$2,000,000])) that they had returned to BLMIS through their Lakeview investment." (Lustig Trust Dkt. No. 58; Lustig Dkt. No. 61).

S.D.N.Y. 1985)); s*ee also, e.g., In re Coin Phones, Inc.*, 153 B.R. 135, 143 (Bankr. S.D.N.Y. 1993) ("A party may not setoff a fraudulent transfer against the amount of a claim that the creditor holds against the debtor."). "This is because where the party seeking to set off is being sued for fraudulent transfers, there is no mutuality of obligations, which is required under Code section 553(a)." *In re O.P.M. Leasing,* 35 B.R. at 868 (citing 4 Collier on Bankruptcy ¶ 553.04[2] (15th ed. 1983)); *see also In re Manshul Constr. Corp.*, 2000 WL 1228866, at *56-57, 2000 U.S. Dist. LEXIS 12576, 97-CV-8851, at *161 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers there is no mutuality of obligations and thus no right to any set-off.").[14]

"The concept of 'mutual debts' contained in section 553 of the Code generally requires that 'the debts must be in the same right and between the same parties, standing in the same capacity.'" *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990); *see also In re Ampal-Am. Israel Corp.*, 545 B.R. 802, 813–14 (Bankr. S.D.N.Y. 2016)*; In re Waterscape Resort LLC*, 544 B.R. at 526. Defendants may have a pre-petition claim against a *non-BLMIS investment entity*, but they cannot seek to set off that claim against their liability to the *Trustee* as transferees of fraudulent conveyances. Mutuality is lacking because the liabilities owed are not between the same parties in the same capacities. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 136, 149 (2d Cir. 1998).

Even if Defendants had a direct claim against the BLMIS *estate*--which they do not— mutuality nevertheless would be lacking because the liability of Defendants to the *Trustee* as transferees of fraudulent conveyances does not constitute a pre-petition debt owed to the debtor;

---

[14] "To permit set-off [against a fraudulent transfer] would be to legalize a payment which was fraudulent, and to do so by indirection what could not be done directly, and would work an injustice which cannot be permitted." *Bennett v. Rodman & English, Inc.*, 2 F.Supp. 355, 358 (E.D.N.Y. 1932) (citing *Hitchcock v. Rollo*, Fed. Cas. No. 6535); *see also McColley v. Rosenberg* (*In re Candor Diamond Corp.*), 76 B.R. 342, 352 n.12 (Bankr. S.D.N.Y. 1987); *In re O.P.M. Leasing*, 35 B.R. at 868.

rather, it is a debt owed to the *Trustee. In re Singh*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (citing *Irving Trust Co.*, 1 F.Supp. at 17 ("These counterclaims are for moneys said to have been owing by the bankrupts for services rendered. The claim asserted by the trustee against the defendants being for fraudulent transfers, the case is not one of mutual debts or credits…The liability of the defendants to the trustee is not a "debt"…)); *see also In re Adbox, Inc.*, 488 F.3d 836 (9th Cir. 2007) (in preference action brought by trustee on behalf of estate, court dismissed defendant's counterclaim which related to pre-petition conduct of debtor, finding that in order to defend against counterclaim, trustee would be required to stand in shoes of debtor, a different representative capacity than the representative capacity on behalf of estate in which the trustee brought his preference action).

Moreover, to permit Defendants to offset their liability for the receipt of fraudulent transfers by the amount of a general unsecured claim (against a third-party investment vehicle, not directly against the BLMIS estate) would perpetuate the fraudulent transfers and render meaningless the Code's fraudulent transfer provisions, as the fraudulently conveyed funds would not become available for *pro rata* distribution to all creditors. *See* 5 Collier on Bankruptcy at ¶ 553.03[3][e][v] ("Setoff Against Preference of Fraudulent Transfer").  Defendants' Twelfth Affirmative Defense is insufficient as a matter of law.

## IV.    THE TRUSTEE WILL BE PREJUDICED BY INCLUSION OF DEFENDANTS' EIGHTH, NINTH, TENTH, ELEVENTH AND TWELFTH AFFIRMATIVE DEFENSES

When an affirmative defense is unavailable as a matter of law, the only remaining inquiry is whether the plaintiff would be prejudiced if the defense remains in the pleadings. *Wausau*, 803 at 213; *see also Toomey,* 866 F.Supp. at 722 ("When 'the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim'") (quoting *Eckert Seamans Cherin & Mellott*, 754 F.Supp. at 23).

12

In this case, the Trustee would be prejudiced by the onerous discovery obligations addressing the meritless defenses asserted by Defendants. In fact, Defendants have already served discovery requests related to these Affirmative Defenses, including requests for documents and information regarding transactions between and among multiple unrelated entities and to which BLMIS was not a party. As detailed in the Trustee's prior correspondence to the Court, such discovery burdens the Trustee with the task of reviewing thousands of documents received in response to numerous subpoenas and/or document requests, in multiple unrelated adversary proceedings involving unrelated issues and concerning transactions to which BLMIS was not a party. The Trustee would be required to scour productions obtained in other litigation looking for documents that may be related to the Affirmative Defenses, and then to negotiate with the producing parties to secure an exemption to the strict confidentiality agreements governing reproduction of the documents.[15] *See McCaskey*, 56 F.Supp.2d at 326 ("An increase in time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion  to strike.") (citing *Toomey*, 866 F.Supp. at 722); *Specialty Minerals, Inc.*, 395 F.Supp.2d at 114 (finding prejudice where "additional discovery would be required" and "length and scope of the portion of the trial related to the claims raised in this proceeding  would be expanded" by inclusion of affirmative defense).

## V.    <u>CONCLUSION</u>

There is no question of fact and no substantial question of law to be determined by this Court, and the Trustee will be prejudiced by inclusion of these affirmative defenses. Accordingly, for the reasons stated above, the Trustee respectfully requests that this Court strike

---

[15] Additional information regarding the discovery requests served by Defendants and the undue burden and expense imposed in responding is more fully set forth in correspondence to the Court regarding Defendants' First Sets of Interrogatories and Document Requests and the Trustee's Responses and Objections to Defendants' First Sets of Interrogatories and Document Requests. (Lustig Trust Dkt. Nos. 66, 67 and 69; Lustig Dkt. Nos. 69, 70 and 72).

Defendants' Eighth, Ninth, Tenth, Eleventh and Twelfth Affirmative Defenses in their entirety

because they are legally insufficient.

Dated: New York, New York
      February 28, 2017

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-0518
Telephone: 713.751.1600
Facsimile: 713.751.1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Farrell A. Hochmuth
Email: fhochmuth@bakerlaw.com

Respectfully submitted,

*/s/ Nicholas J. Cremona*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*